No. 30,774.

NICHOLAS MARTIN, *Appellant,* v. THE CITIZENS BANK, C. M. BRANCH, G. C. PELLS, SCOTT CLARK, BRUCE YOUNG, F. P. HETTINGER and ALLEN WINCHESTER, *Appellees.*

(8 P. 2d 81.)

Opinion filed February 22, 1932.

*Nicholas Martin,* of San Diego, Cal., *pro se.*

*A. Lewis Oswald,* of Hutchinson, for the appellees.

*Roland Boynton,* attorney-general, for the bank commissioner.

The opinion of the court was delivered by

HARVEY, J.: This is a proceeding for a declaratory judgment. From the record it appears that the plaintiff, Nicholas Martin, is the owner of 100 shares of the capital stock of the Citizens Bank of Hutchinson, a banking corporation organized under the laws of this state, having a capital stock of $200,000 and a surplus of $100,000; that on January 25, 1932, by order of its board of directors, the bank suspended business, and so notified the state bank commissioner, who placed a deputy bank commissioner in charge of the business of the bank for the purpose of protecting the rights of all parties concerned. No receiver has been appointed, and the directors of the bank are taking steps toward the liquidation of its affairs. The board of directors of the bank has made application to the United States reconstruction finance corporation for a loan of a sum not exceeding $200,000, which, if made, requires a pledge as collateral for the loan of bonds or other negotiable paper of the bank. The state bank commissioner has given his consent for the directors of the bank to make the loan.

A real controversy has developed as to the right of the board of directors of the bank to make such a loan and to so pledge its as-

sets as collateral. Plaintiff contends, in substance, that the bank commissioner, having taken charge of the bank by his deputy, is now in full charge of the business of the bank, and that the bank, as a corporation, or its board of directors acting for it, no longer has power to borrow money, or to pledge as collateral for money borrowed any of the assets of the bank; while, on the other hand, the bank and its board of directors contend that, no receiver having been appointed, the normal powers of the corporation and its directors have not been annulled, their activities being only supervised by the bank commissioner, and that they have all the power they ever had to borrow money and pledge as collateral for such loan the assets of the bank, the only difference being that the specific loan should have the direct approval of the bank commissioner, and since such approval has been given, there is no lack of authority on their part to make such loan.

The trial court found that the defendant bank, acting through its duly constituted board of directors, has full power to negotiate the loan and to pledge the collateral as security therefor. Plaintiff has appealed from that ruling.

The legal question presented turns upon an interpretation of our statute (R. S. 9-130, as amended by Laws 1927, ch. 88, now R. S. 1931 Supp. 9-130). This statute in effect provides if "it shall appear" that any bank is insolvent, or has willfully violated any requirement of the banking act, it shall be the duty of the bank commissioner to take charge of the bank and its assets, and he may appoint a special deputy bank commissioner to take charge temporarily.

"Upon taking charge of any bank, the bank commissioner shall as soon as possible ascertain, by a thorough examination into its affairs, its actual condition; and whenever he shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all its creditors, he shall forthwith appoint a receiver. . . ."

Now, to what extent does the bank commissioner, when he takes charge of a bank by a special deputy, and before it is definitely ascertained that the bank is insolvent and the receiver is appointed, supersede the board of directors of the bank in the conduct of its business? The statute itself clearly contemplates that the condition of the bank might be rehabilitated so that the bank could resume business, or that it might be able to liquidate its indebtedness to the satisfaction of all its creditors, as it has authority to do (R. S.

1931 Supp. 9-132), in either of which events no receiver would be appointed. In *State, ex rel., v. Wilson*, 108 Kan. 641, 196 Pac. 758, a proceeding to oust a bank commissioner, one of the complaints being of the manner in which he handled the affairs of the Linn County State Bank, where there had been willful violation of the banking laws, a special deputy bank commissioner was appointed, who looked after the banking transactions for about ten days, when matters were so adjusted he was no longer necessary. Another ground of complaint was with reference to the Kansas State Bank at Salina. A deputy bank commissioner was placed in the bank, who took full charge, overseeing loans and discounts. He remained in the bank from November until the next April, when a reorganization was effected and the deputy bank commissioner was withdrawn. It was necessary to replace in the bank a deputy bank commissioner the next December, who remained until a receiver was appointed the following May. During all that time, or most of it, the bank was open for business, receiving deposits and conducting an ordinary banking business. The statute above cited was quoted (p. 650) and the discussion (p. 659 *et seq.*) leaves no room to doubt the power of the board of directors to function, with the approval of the bank commissioner. It is made clear in both the syllabus and the opinion of that case that the bank commissioner, prior to the appointment of a receiver, has great discretion in the matter of the extent to which he, or his deputy, will interfere with the activities of the board of directors in the management of a bank. The question was again before this court in the case of *Kansas State Bank v. Atchison, T. & S. F. Rly. Co.*, 122 Kan. 77, 251 Pac. 188, where it was held:

"The taking possession of and closing of a bank by the bank commissioner does not necessarily work a dissolution of the corporation."

And in the opinion (p. 79 *et seq.*) it was made clear that, prior to the appointment of a receiver, the board of directors of the bank may proceed to conduct its business under the advice and with the approval of the bank commissioner or his deputy.

Hence, from the wording of the statute, and in harmony with the interpretations previously given, we hold that the board of directors of the bank, with the consent of the bank commissioner, has authority to make the loan in question.

The judgment of the court below is affirmed.